IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNAMALAI ANNAMALAI,#56820-379, *also known as* SWAMIJI SRI SELVAM SIDDHAR, Plaintiff, vs. NATHAN SIMPKINS, GARY BURGESS, ANNABELL FIELDS, USA, JOHN DOES 1-10, and CURRENT WARDEN OF USP-MARION Defendants. | Case No. 22-cv-01541-JPG |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter comes before the Court for a decision on a Motion to Dismiss Count 4 for Failure to State a Claim (Doc. 76) and Motion for Partial Summary Judgment on Count 4 for Failure to Exhaust Administrative Remedies (Doc. 77) filed by Defendants Burgess, Fields, Simpkins, and USP-Marion's Warden. As explained in more detail below, the Motion to Dismiss shall be **GRANTED**, and the Motion for Summary Judgment shall be **DISMISSED as MOOT**.

### BACKGROUND

Plaintiff Annamalai is an inmate in the custody of the Federal Bureau of Prisons (FBOP) and filed this action to address nineteen claims that arose at four FBOP facilities. (Doc. 1). The Court severed seven claims[1] (*see* Doc. 24) and screened the remaining twelve under 28 U.S.C.

---

[1] Counts 1, 2, 7, 7a, 13, 14, and 15 were severed from this case.

1

§ 1915A (*see* Doc. 25).  Only five claims survived screening, including four against the United States (Counts 3, 7b, 9, and 10) and one against individual federal officers (Count 4).[2]  *Id*.

The two pending motions target the only claim against individual officers:

**Count 4:**   Eighth Amendment claim pursuant to *Bivens* against Simpkins, Fields, Burgess, and Does 1-10 for failing to protect Plaintiff from the risk of harm William White posed to his health or safety in USP-Marion's CMU/CTU in October 2021.  (Doc. 25, pp. 11-12).

In lieu of Answers, Defendants filed a Motion to Dismiss Count 4 for Failure to State a Claim (Doc. 76) and a Motion for Partial Summary Judgment on Count 4 for Failure to Exhaust Administrative Remedies (Doc. 77).

### MOTIONS FOR DISMISSAL OF COUNT 4

Defendants seek dismissal of Count 4 under Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure.  In the Rule 12(b)(6) motion, Defendants argue that Plaintiff's Eighth Amendment claim presents a new context not previously recognized by the United States Supreme Court in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), or its progeny, and special factors weigh against expansion of an implied damages remedy into this new realm.  (Doc. 76) (citing *Egbert v. Boule*, 596 U.S. 482 (2022); *Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Hernandez v. Mesa*, 589 U.S. --, 140 S.Ct. 735 (2020)).  Alternatively, Defendants seek dismissal of this claim under Rule 56, based on Plaintiff's failure to exhaust all available administrative remedies before filing suit.  (Doc. 77).

While these motions were pending, the Seventh Circuit Court of Appeals decided *Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. Nov. 28, 2023), a case involving an Eighth Amendment claim against a prison official who failed to protect an inmate from violent attack by his cellmate.  The

---

[2] Counts 3, 4 (in part), 7b, 9, and 10 survived review under § 1915A, and Counts 4 (in part), 5, 6, 8, 11, 12, 16, and 17 were dismissed at screening.

Court of Appeals held that the claim presented a new context, and special factors warranted restraint in recognizing a damages remedy. *Id*. Defendants now argue that *Barfield* controls the outcome of Count 4 in this case. (Doc. 121). This Court agrees.

## DISCUSSION

**A.     Standard of Review**

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to decide the adequacy of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(6) dismissal, the complaint must allege enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Plaintiff need not plead detailed factual allegations, but he or she must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

**B.     Factual Allegations**

Plaintiff's Eighth Amendment claim arises from allegations that individual officers at USP-Marion failed to protect him from an assault by Inmate William White. (Doc. 1, pp. 1-29). Inmate White violently attacked Plaintiff soon after he transferred into USP-Marion's Communications Management Unit/Counter Terrorism Unit (CMU/CTU). *Id*. When he learned of his housing assignment, Plaintiff told FBOP officials that he feared for his life, as a Hindu High Priest and

non-violent offender who was housed among known white supremacists and violent offenders. *Id*. at 5. Plaintiff identified Inmate White as a threat to his safety and warned prison officials that Inmate White would attempt to assault or murder him. *Id*. at 8.

Plaintiff was nevertheless transferred into the CMU/CTU on October 7, 2021. *Id*. at 5. He immediately informed Nathan Simpkins that he feared Inmate White and Inmate Muhammad would attempt to assault or murder him, but Simpkins ignored his concerns. Immediately thereafter, both inmates threatened to "slice" and "stab" him to death. *Id*. at 6. Plaintiff described these threats in a letter he sent three days later to Chief Psychologist Annabell Fields. Plaintiff also approached Simpkins again to report the specific threats on October 13, 2021. *Id*. at 7. While doing so, Inmate White approached Plaintiff, bumped him, and insulted him. Simpkins "laughed and enjoyed" the encounter. Plaintiff reported the incident to Intelligence Research Specialist Kathy Hill. *Id*.

Inmate White attacked him later the same day. White approached Plaintiff, kicked him to the floor, pinned him down, choked him, and struck him in the back of the head. While doing so, Inmate White threatened to murder Plaintiff for being a "Hindu bastard." *Id*. at 7. Plaintiff found a pair of craft scissors in his pocket and defended himself.

As a result of the attack, he suffered extensive blood loss, broken teeth, a broken finger, and breathing difficulties. In spite of his pleas for medical treatment, Plaintiff was thrown into solitary confinement without medical care. He was issued a disciplinary ticket for possessing a weapon and fighting and punished with 50 days in segregation and 54 days of good conduct credit loss. The disciplinary report was later expunged. *Id*.

### C. Analysis

The Seventh Circuit recently considered whether a federal prisoner can pursue a *Bivens* action against a prison official who failed to protect him from a violent attack by another inmate. *Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. decided Nov. 28, 2023). The Court of Appeals answered this question in the negative, while emphasizing that its holding is a narrow one. This Court is presented with the same question and reaches the same conclusion here.

*Barfield* involved a federal inmate (Sargeant) who was violently attacked by his cellmate, after his case manager (Barfield) transferred him into a cell with an inmate she knew was violent. *Id*. at 360-61. Barfield made this housing decision after Sargeant filed a grievance against her. *Id*. In the complaint, Sargeant pursued a First Amendment retaliation claim against Barfield, and the defendant successfully moved to dismiss the complaint by arguing that a federal inmate cannot recover damages for a violation of First Amendment rights. The complaint was dismissed with prejudice. *Id*.

On appeal, Sargeant abandoned the First Amendment theory in favor of an Eighth Amendment claim against Barfield for failing to protect him from a violent attack by his cellmate. *Id*. Sargeant argued that this Eighth Amendment claim should have been allowed to proceed under *Bivens*, but the district court failed to recognize it when screening the complaint. The Seventh Circuit agreed that Sargeant, a *pro se* litigant, was not required to plead particular legal theories. *Id*. at 362 (The "Federal Rules of Civil Procedure do not require a plaintiff to allege legal theories or even facts corresponding to each element of a claim."). The Court also noted that the allegations presented in *Barfield* are the type that typically underpin Eighth Amendment failure-to-protect claims. *Id*. Even so, Sargeant's claim was not one of the limited claims allowed under *Bivens*. *Id*.

5

The Supreme Court has recognized a *Bivens* remedy against federal officers in just three contexts: (1) a Fourth Amendment claim involving an unlawful search and seizure in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); (2) a Fifth Amendment claim of sex discrimination in *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim for inadequate medical care for an asthmatic prisoner in *Carlson v. Green*, 446 U.S. 14 (1980).  The Supreme Court has more recently cautioned courts against implying any new causes of action.  *Egbert v. Boule*, 596 U.S. at 487 ("[I]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.").  In fact, the most recent decisions of the Supreme Court expressly discourage all further expansion of *Bivens*.  *See Ziglar*, 582 U.S. at 135 (noting that "expanding the *Bivens* remedy is now a disfavored judicial activity"); *Hernandez*, 140 S.Ct. at 735, 742-43 (noting that if its three "*Bivens* cases had been decided today, it is doubtful that we would have reached the same result"); *Egbert*, 596 U.S. at 489 ("[W]e have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power.").  The *Egbert* Court emphasized that "creating a cause of action is a legislative endeavor," so "the Judiciary's authority to do so at all is, at best, uncertain." *Id*.

To determine whether a *Bivens* remedy is available for a particular claim going forward, courts have been instructed to apply the analytical framework articulated in *Ziglar*, *Hernandez*, and *Egbert*.  First, a court must determine whether a case presents a new *Bivens* context by asking whether it differs in a meaningful way from previous *Bivens* cases authorized by the Supreme Court.  *Ziglar*, 582 U.S. at 147.  Second, if the context is new, the court must consider whether "special factors" counsel hesitation in expanding this remedy into the new context absent congressional action and, if so, refrain from recognizing the implied damages remedy.  *Id*.  In *Egbert*, the Supreme Court clarified that the second part of this analysis really boils down to a

6

single question: "whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Ziglar*, 582 U.S. at 136). A court may not recognize a *Bivens* remedy, if there is a "single reason to pause before applying *Bivens* in a new context," such as when Congress already has provided, or authorized the Executive to provide, an "alternative remedial structure." *Egbert*, 596 U.S. at 492-94.

When considering whether the Eighth Amendment claim in *Barfield* presented a new context, the Seventh Circuit rejected Sargeant's argument that the Supreme Court already approved a *Bivens* action for Eighth Amendment failure-to-protect claims in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Sargeant*, 87 F.4th at 364. The Seventh Circuit point out that the Supreme Court only presupposed that the prisoner could seek damages and did not actually hold that a *Bivens* remedy was available. *Id.* at 365. This "silent assumption" cannot "generate binding precedent." *Id.*

The Court of Appeals went on to find that the claim in *Barfield* is meaningfully different than *Bivens*, *Passman*, and *Carlson*. *Carlson* is the only case to address an Eighth Amendment claim, and that claim hinged on the denial of medical care, not the failure to protect an inmate. The prison setting was also different, even if both cases implicated officers of like rank and involved similar legal mandates.

Moreover, special factors warranted hesitation on the part of the judiciary. The Seventh Circuit reasoned that allowing this claim to proceed risks interference with other government branches involved in housing decisions, safety determinations, prison discipline, and FBOP resources. The claim also risks intrusion into FBOP functions not contemplated in *Carlson*. The Prison Litigation Reform Act (PLRA) also changed the way prisoners litigate their claims and

7

required them to exhaust their available administrative remedies before bringing suit in federal court. 42 U.S.C. § 1997e(a). The existence of the FBOP's internal grievance process provides a mechanism for seeking redress of grievances and provides a reason that Congress might not authorize a damages remedy. Given these considerations, the *Barfield* Court concluded that it lacked authority to create a new remedy, after finding that even a modest extension of *Bivens* is still an extension:

> Under these guiding principles, we see no way forward for Sargeant's claim. No matter how we decipher the test—as one step or two—the special factors and separation-of-powers concerns implicated by Sargeant's suit ultimately lead to its dismissal.

*Sargeant*, 87 F.th at 366. The Eighth Amendment failure-to-protect claim at issue in *Barfield* was thus dismissed.

For the same reasons, Count 4 shall also be dismissed. The Eighth Amendment failure-to-protect claim at issue here is meaningfully different from *Bivens, Passman,* and *Carlson*. The same special factors that gave the Seventh Circuit pause in *Barfield* do the same for this Court, including concerns about the different nature of this failure-to-protect claim, distinct prison setting, new concerns not contemplated in *Carlson*, and risk of intrusion into decisions best left to the FBOP (*e.g.*, housing, disciplinary, security, etc.). Moreover, Plaintiff had access to a grievance procedure and was required to use it in compliance with the PLRA. The existence of this alternative remedial structure is, alone, a factor that warrants hesitation in recognizing an implied damages remedy here.

For these reasons, the Motion to Dismiss Count 4 for Failure to State a Claim (Doc. 76) shall be granted, and the Motion for Partial Summary Judgment on Count 4 for Failure to Exhaust Administrative Remedies (Doc. 77) shall be dismissed as moot. Count 4 shall be dismissed with prejudice.

**DISPOSITION**

The Motion to Dismiss Count 4 for Failure to State a Claim (Doc. 76) is **GRANTED**, and the Motion for Partial Summary Judgment on Count 4 for Failure to Exhaust Administrative Remedies (Doc. 77) is **DISMISSED** as **MOOT**. The Eighth Amendment failure-to-protect claim in **COUNT 4** is hereby **DISMISSED** with prejudice. **The Clerk's Office is DIRECTED to TERMINATE Defendants Burgess, Fields, Simpkins, and John Does 1-10 as parties in CM/ECF and ENTER judgment accordingly at the close of this case**.

IT IS SO ORDERED.

DATED: 1/22/2024

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**